Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| DEPARTAMENTO DE RECURSOS NATURALES<br><br>Apelada<br><br>v.<br><br>WINDMAR RENEWABLE ENERGY, PUERTO RICO LAND & FRUIT S/E<br><br>Apelante | KLAN202400574 | Apelación Procedente del Tribunal de Primera Instancia, Sala de PONCE<br><br>Caso Núm.:<br>GY2023CV00103<br><br>Sobre:<br>Petición de Orden |
|---|---|---|

Panel integrado por su presidente el Juez Figueroa Cabán, el Juez Bonilla Ortiz, la Jueza Mateu Meléndez y la Jueza Prats Palerm.

Mateu Meléndez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 11 de octubre de 2024.

El 10 de junio de 2024, Puerto Rico Land & Fruit, S.E., conocida ahora como Puerto Rico Land & Fruit (en adelante, PRLF) y Windmar Renewable Energy, Inc. (en adelante, Windmar) (en conjunto, la parte apelante), sometieron ante la consideración de este Tribunal de Apelaciones (en adelante, TA o foro revisor) un *Recurso de Apelación*. A través de este, nos solicitan la revocación de la *Sentencia* dictada por el Tribunal de Primera Instancia, Sala Superior de Ponce (en adelante, TPI o foro primario) emitida el 10 de abril de 2024 y notificada el día 12 del mismo mes y año.

Por los fundamentos que expondremos a continuación, **confirmamos** la *Sentencia* apelada.

-I-

El **9 de junio de 2016**, el Departamento de Recursos Naturales y Ambientales (en adelante, DRNA, Departamento o la parte apelada) instó una *Querella* en contra de Windmar y PRLF. Según allí se expuso, Windmar interesaba desarrollar un proyecto para la instalación de placas

Número Identificador

SEN2024 _____

fotovoltaicas para la producción de energía en unos terrenos pertenecientes a PRLF. Asimismo, se indicó que durante el proceso de evaluación de los documentos sometidos por Windmar ante el Departamento con relación al proyecto, se determinó que previo a las solicitudes presentadas y la obtención de permisos o endosos por parte del DRNA u otras agencias reguladoras, la parte apelante había realizado por sí o a través de sus agentes o empleados lo siguiente:

1. Labores de remoción o movimiento de materiales de la corteza terrestre, impactando varias áreas de la finca;

2. la remoción o corte de unos estimados 190,350 árboles; y

3. la eliminación y afectación del Hábitat Natural en el área impactada y circundantes, en donde, se ha identificado la presencia de Guabairo- especie en peligro de extinción.[1]

Según se alegó, lo anterior constituía infracciones a varias leyes y reglamentos.[2] Por estas, se solicitó que se impusiera a cada una de las querelladas el siguiente remedio:

a) Multa Administrativa hasta cincuenta mil ($50,000.00) dólares por cada infracción a la Ley de Corteza Terrestre y/o sus Reglamentos.

b) Multa administrativa hasta cincuenta mil dólares ($50,000.00), no menor de cincuenta dólares ($50.00) ni mayor de quinientos dólares ($500.00) por cada árbol afectado.

c) Multa administrativa hasta diez mil dólares ($10,000.00), por infracción a la Ley Núm. 241 del 15 de agosto de 1999, s/e, Reglamento 6765, Reglamento 6766.

d) Llevar a cabo las obras de restauración y/o mitigación que sean requeridas por el Departamento de Recursos Naturales y Ambientales, las que como mínimo requiere: mitigación por concepto de afectación de Hábitat Natural en donde se ha identificado la presencia de una especie en peligro de extinción (Guabairo) en proporción de tres a uno (3-1), lo que representa ciento cincuenta cuerdas (150 cuerdas) de terreno y mitigación por concepto de remoción de árboles en proporción de uno a

---

[1] Apéndice 1 del Recurso de Apelación, pág. 2.

[2] Las leyes y los reglamentos que el Departamento alegó que fueron violentados son los siguientes: Artículo 2 de la Ley Núm. 132 de 25 de junio de 1968, según enmendada, mejor conocida como *Ley para Reglamentar la Extracción de Arena, Grava y Piedra*; Artículo 22 del *Reglamento para Regir la Extracción de Material de la Corteza Terrestre* (Reglamento 6916); Artículo 9(b)(1) de la Ley Núm. 133 del 1 de julio de 1975, mejor conocida como la *Ley de Bosques de Puerto Rico*; Artículo 6(t) de la Ley Núm. 241 del 15 de agosto de 1999, conocida como *Nueva Ley de Vida Silvestre de Puerto Rico*; Artículo 2.03 del *Reglamento para Regir la Conservación y el Manejo de la Vida Silvestre, las Especies Exóticas y la Caza en el Estado Libre Asociado de Puerto Rico* (Reglamento 6765); y el Artículo 2.05 del *Reglamento para Regir las Especies Vulnerables y en Peligro de Extinción en el Estado Libre Asociado de Puerto Rico* (Reglamento 6766).

uno (1-1), lo cual representa cincuenta cuerdas (50 cuerdas) de terreno.

Tras los trámites de rigor, el 28 de diciembre de 2016, el Departamento emitió su *Resolución* en la que ordenó la mitigación de ciento cincuenta (150) cuerdas de terreno por concepto de afectación de Hábitat Natural de Alto Valor Ecológico y remoción de árboles sin autorización. Ordenó la donación de setenta y cinco (75) cuerdas de terreno por concepto de compensación por el valor monetario y ecológico de los terrenos impactados previo a la obtención de los permisos, endosos o autorizaciones correspondientes. Impuso una multa administrativa total de cincuenta mil dólares ($50,000.00) a la parte apelante de manera solidaria. Además, ordenó a la parte apelante que obtuviera un *Performance Bond* a favor del DRNA por el valor de los terrenos objeto de mitigación y donación.

Para efectos de una de las controversias traídas ante nuestra consideración, destacamos que la *Resolución* emitida por el Departamento contenía las siguientes advertencias legales:

10. Se apercibe, **a cualquier parte adversamente afectada** por esta Resolución que, a tenor con lo establecido en la sección 3.15 de la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, 3 LPRA §2165, **tiene derecho a solicitar reconsideración de la misma dentro del término de veinte (20) días a partir del archivo en autos de la notificación de la resolución u orden. La agencia dentro de los quince (15) días de haberse presentado dicha moción deberá considerarla. Si la rechazare de plano o no actuare dentro de los quince días, el término para solicitar revisión comenzará a correr desde que se notifique dicha denegatoria o desde que expiren esos quince (15) días, según sea el caso.** Si se tomare alguna determinación en su consideración, el término para solicitar revisión empezará a contarse desde la fecha en que se archiva en autos o copia de la notificación de la resolución de la agencia resolviendo definitivamente la moción de reconsideración. Tal resolución deberá ser admitida y archivada en autos dentro de los noventa (90) días siguientes a la radicación de la moción de reconsideración. Si la agencia acoge la moción de reconsideración pero deja de tomar alguna acción con relación a la moción dentro de los noventa (90) días de ésta haber sido radicada, perderá jurisdicción sobre la misma y el término para solicitar la revisión judicial empezará a contarse a partir de la expiración de dicho término de noventa (90) días salvo que la agencia, por justa causa y dentro de esos noventa (90) días, prorrogue el término para resolver por un periodo que no excederá de treinta (30) días adicionales.

.        .        .        .        .        .        .        .

12. Además, la sección 4.2 de la Ley 170, 3 LPRA §2172, establece la revisión judicial de aquellas órdenes, resoluciones y providencias

dictadas por agencias o funcionarios administrativos que deban o puedan ser revisadas por el Tribunal de Apelaciones mediante Recurso de Revisión. **Si la Parte Recurrente no solicita revisión judicial en el término de treinta (30) días para así hacerlo, esta Resolución se convertirá en final y firme.**

El 17 de enero de 2017, la parte apelante solicitó reconsideración de la determinación emitida. A pesar de haber acogido la misma, el Departamento no se expresó en cuanto a los asuntos planteados en esta. Vencido el término para que así lo hiciera, la parte apelante sometió ante este Tribunal de Apelaciones el recurso de revisión **KLRA201700410**. El 8 de febrero de 2018, se emitió una *Sentencia* mediante la que se confirmó la determinación recurrida. De dicho dictamen, se solicitó reconsideración, pero el foro revisor declaró No Ha Lugar, el 21 de marzo de 2018. De esta decisión, la parte apelante recurrió en alzada ante el Tribunal Supremo de Puerto Rico, quien denegó expedir.

Así las cosas, el 26 de mayo de 2023, el Estado Libre Asociado de Puerto Rico, en representación del Departamento, acudió ante el TPI mediante *Moción en Auxilio de Jurisdicción y Solicitud de Orden para Exigir Cumplimiento de Resolución*. Tras los trámites de rigor y atender distintos asuntos, el 10 de abril de 2024, el foro primario emitió la *Sentencia* apelada. Allí, tras exponer los planteamientos de ambas partes, expresó lo que a continuación transcribimos:

> A nuestro modo de ver el asunto y conforme al ordenamiento jurídico aplicable, nuestra función en esta etapa de ejecución no está para dilucidar la corrección de la Resolución emitida por el DRNA, pero para ordenar su fiel y estricto cumplimiento. El asunto de la corrección de la determinación administrativa es parte de la revisión judicial. Encontramos que los planteamientos presentados por las partes demandadas en etapa de ejecución debieron ser presentados cuando acudió en revisión judicial ante el Tribunal Apelativo. No nos corresponde atender los mismos. En consecuencia, este Tribunal no puede permitir que el procedimiento de ejecución que tiene ante sí se convierta en uno de revisión judicial. Carecemos de jurisdicción para ello. Cualquier Sentencia en esos extremos sería nula. Así las cosas, solo procede dictar Sentencia.[3]

---

[3] Apéndice 16 del Recurso de Apelación, págs. 329-330.

Ante la determinación emitida, la parte apelante presentó su *Reconsideración y Solicitud de Orden*, el 24 de abril de 2024. En esta, además de solicitarle al tribunal que reconsiderara su decisión, solicitó el relevo de la *Sentencia* dictada. A tales fines, primero aseveró que en el caso no se cumplía con el requisito de liberalidad que se exige en una donación. En segundo lugar, planteó que la *Sentencia* que este foro revisor emitió al atender el recurso **KLRA201700410** era nula. Tal nulidad, según la parte apelante, se debía a que las advertencias legales pertinentes a la revisión judicial que se incluyeron en la *Resolución* eran contrarias a derecho.

Sobre esto último, argumentó que la Ley de Bosques de Puerto Rico es la que gobierna el procedimiento cuasi judicial que motivó la *Resolución* del Departamento, por lo que el proceso de revisión judicial sobre ella debió atenerse a las disposiciones de tal estatuto. La parte apelante, señaló que el Artículo 16 de la Ley de Bosques designa como foro con jurisdicción para la revisión al Tribunal de Primera Instancia y no al foro intermedio. Ante este planteamiento, expuso que la *Resolución* emitida en el caso por el Departamento, allá para el año 2016, no era final y firme, puesto que el término para acudir en su revisión no había comenzado a transcurrir.

El 15 de mayo de 2024, el Departamento se opuso al escrito de *Reconsideración y Solicitud de Orden*. En respuesta a los argumentos de la parte apelante, señaló que la donación decretada en el proceso administrativo fue uno de los remedios propuestos por las partes. Añadió que, contrario a lo que la parte apelante expresó en su escrito de reconsideración, la oferta de donación no surge de una propuesta de transacción previo al proceso administrativo, sino una oferta dentro del mismo. Por ello, aseveró que el elemento de liberalidad para la donación se dio desde el momento en que de manera libre y voluntaria estipularon obligarse a ceder y transferir en pleno dominio todo terreno que fuera objeto de mitigación.

De otra parte, negó la nulidad de la *Sentencia* emitida por este Tribunal de Apelaciones que confirmó la *Resolución* del Departamento. En cuanto a ello, destacó que la Ley de Bosques del 1 de julio de 1975 y la Ley de Procedimientos Administrativos Uniformes del 12 de agosto de 1988, rigen materias especiales distintas, por lo que no aplicaba el principio de especificidad. En la alternativa, sugiere que, con la aprobación de la LPAU del 1988, quedaron derogadas las disposiciones procesales contenidas en la Ley de Bosques para la revisión judicial. Al final de cuentas, ripostó, que era indiscutible que "la clara voluntad legislativa al aprobar la LPAU del 1988 fue uniformar la revisión judicial de resoluciones emitidas por agencias, como el DRNA, haciendo al Tribunal de Apelaciones el foro exclusivo para ello, excepto aquellos asuntos excluidos expresamente".

El 17 de mayo de 2024, el TPI se negó a reconsiderar su decisión. En desacuerdo con ello, la parte apelante instó el recurso de epígrafe y señaló la comisión de los siguientes errores:

> PRIMER ERROR: ERRÓ EL TPI AL NO RELEVAR A LOS COMPARECIENTES DE LA SENTENCIA PREVIA DEL TRIBUNAL DE APELACIONES EN QUE SE BASA EL PRESENTE CASO POR SER NULA POR FALTA DE JURISDICCIÓN.

> SEGUNDO ERROR: ERRÓ EL TPI AL NO RELEVAR DE UNA RESOLUCIÓN ACADÉMICA POR RAZÓN DE QUE SE ORDENA LA MITIGACIÓN COMO REMEDIO ADICIONAL QUE SE RECUPERÓ NATURALMENTE; POR LA PROPIA ADMISIÓN DEL DRNA.

> TERCER ERROR: ERRÓ EL TPI AL CONFIRMAR UNA *RESOLUCIÓN* CUYO CUMPLIMIENTO ES LEGALMENTE IMPOSIBLE PUES ORDENA UNA DONACIÓN, LO QUE ES CONTRARIO A LA DEFINICIÓN LEGAL DE DONACIÓN QUE REQUIERE DE LIBERALIDAD.

Atendido el recurso, le ordenamos al Departamento a someter su postura en treinta (30) días. El 8 de julio de 2024, este solicitó una extensión de tiempo para presentar su comparecencia; término que le fue concedido mediante *Resolución* del 9 de julio de este año. El 8 de agosto de 2024, finalmente el Departamento compareció mediante *Escrito en Cumplimiento de Resolución*.

Con el beneficio de la comparecencia de ambas partes, damos por sometido el asunto y procedemos a resolver.

**-II-**

La interpretación de las leyes o la hermenéutica legal consiste en auscultar, precisar y determinar cuál era la voluntad legislativa al aprobar la ley. Class Fernández v. Metro Health Care Management System, Inc., 2024 TSPR 63, 213 _____. El Tribunal Supremo de Puerto Rico ha expresado que las reglas de hermenéutica sentadas en nuestro ordenamiento jurídico "se imponen como principios rectores" del ejercicio adjudicativo de los tribunales. *Íd.*, al citar a Rosado Molina v. ELA, 195 DPR 581, 589 (2016) y otros.

Ante esto, el tribunal que interprete un estatuto debe primero acudir al texto de la ley, pues si el lenguaje es claro y libre de ambigüedad, no debe menospreciarlo bajo el pretexto de cumplir con su espíritu.[4] No hay necesidad de recurrir al subterfugio de indagar más allá de la ley para cumplir con su propósito legislativo si el texto de la ley es claro. Sin embargo, debe evitarse la aplicación literal de la ley si el hacerlo tiene consecuencias absurdas. La interpretación debe ser razonable y consecuente con el propósito legislativo.[5]

Cuando surge alguna ambigüedad en cuanto al texto de un estatuto, los tribunales deben asegurar el cumplimiento con los propósitos legislativos. La fuente que debe consultarse en ese contexto es el historial legislativo del estatuto en cuestión, incluyendo la exposición de motivos de la ley, los informes rendidos por las comisiones de las cámaras y los debates celebrados en el hemiciclo. Class Fernández v. Metro Health Care Management System, Inc., *supra*, y casos allí citados.

---

[4] *Íd.*, al mencionar el Art. 19 del Código Civil de 2020, 31 LPRA Sec. 5341 y FCPR v. ELA, et al., 211 DPR 521 (2023)

[5] Class Fernández v. Metro Health Care Management System, Inc., *supra,* al citar a San Gerónimo Carbie Project v. Registradora, 189 DPR 849 (2013) y otros allí citados.

**-III-**

Mediante el recurso que nos ocupa, el apelante hizo tres señalamientos de error.

En su primer señalamiento, argumentó que el TPI erró al no relevar al apelante de la *Sentencia* previa de este tribunal, por esta ser nula por falta de jurisdicción. En síntesis, alegó que la Ley de Bosques de Puerto Rico gobierna el procedimiento cuasi judicial que motivó la *Resolución* del DRNA e indicó que hubo una notificación defectuosa por parte de la agencia administrativa. Esto último, dado que en el texto de dicha ley la revisión judicial le compete al Tribunal de Primera Instancia y no al Tribunal de Apelaciones. Por ende, según la parte apelante, el foro revisor carecía de jurisdicción al momento en que se recurrió en revisión y su dictamen, consecuentemente, es nulo en derecho.

Según arriba establecimos, el primer paso al interpretar un estatuto es remitirse al texto de la ley. Ello así, pues cuando el legislador se ha expresado en un lenguaje claro e inequívoco en la legislación, es esta la expresión por excelencia de la intención legislativa.

En cuanto al proceso de revisión judicial, el Artículo 16 de la Ley de Bosques de Puerto Rico establece como a continuación transcribimos:

> Cualquier parte adversamente afectada por una resolución, orden o decisión del Secretario de Recursos Naturales [y Ambientales] podrá solicitar su reconsideración dentro del término de quince (15) días a partir de la fecha de notificación de dicha resolución, orden o decisión.
>
> La radicación de la solicitud de reconsideración no eximirá a persona alguna de cumplir y obedecer cualquier decisión u orden ni operará en forma alguna a modo de suspensión o posposición de la vigencia de la misma, a menos que medie una orden especial del Secretario de Recursos Naturales [y Ambientales]. **La resolución o decisión que emita el Secretario de Recursos Naturales [y Ambientales] durante el procedimiento de reconsideración advendrá final y firme a menos que la parte o partes que resulten adversamente afectadas soliciten su revisión ante el Tribunal de Primera Instancia de Puerto Rico, Sala de San Juan, dentro de los treinta (30) días siguientes a la fecha de recibo de la notificación.** Será requisito indispensable solicitar la reconsideración de la decisión u orden del Secretario antes de acudir a los tribunales en revisión judicial de dicha orden o decisión. El Secretario tendrá treinta (30) días para decidir la reconsideración solicitada, pasados

los cuales, si no ha emitido su decisión, se entenderá denegada. El Secretario notificará a la parte afectada la decisión en torno a la reconsideración solicitada o el hecho de que ha sido denegada por haber transcurrido el término antes dispuesto. La radicación del recurso de revisión de cualquier resolución, orden o decisión del Secretario de Recursos Naturales [y Ambientales] no suspenderá los efectos de tal resolución, orden o decisión a menos que el tribunal así lo ordene a solicitud de parte interesada, previa vista y determinación de que la parte contra la que se hubiera dictado la resolución, orden o decisión, sufrirá daños graves o irreparables de no decretarse tal suspensión. (Énfasis suplido)

Por su parte, y en cuanto al mismo procedimiento, la Ley 170 de 1988,

según enmendada, disponía lo siguiente:

Sección 3.15. — Reconsideración. (3 LPRA § 2165)

Cualquier parte podrá, dentro del término de quince (15) días desde la fecha de archivo en autos de la notificación de la resolución u orden final, presentar una moción de reconsideración de la resolución u orden. La agencia dentro de los quince (15) días de haberse presentado dicha moción deberá considerarla. Si la rechazare de plano o no actuare dentro de los quince (15) días, el término para solicitar apelación administrativa o revisión judicial comenzará a correr nuevamente desde que se notifique dicha denegatoria o desde que expiren esos quince (15) días, según sea el caso. Si se tomare alguna determinación en su consideración, el término para solicitar apelación administrativa o revisión judicial empezará a contarse desde la fecha en que se archive en autos una copia de la notificación de la resolución de la agencia resolviendo definitivamente la moción de reconsideración. Tal resolución deberá ser emitida y archivada en autos dentro de los treinta (30) días siguientes a la fecha en que la agencia acogió la moción de reconsideración. Si la agencia acoge la moción de reconsideración pero deja de tomar alguna acción con relación a la moción dentro de los treinta (30) días de esta haber sido acogida, perderá jurisdicción sobre la misma y el término para solicitar la apelación administrativa o la revisión judicial empezará a contarse a partir de la expiración de dicho término de treinta (30) días. Ese término de treinta (30) días podrá ser extendido por la propia agencia por justa causa y dentro de esos treinta (30) días, por un período que no excederá de treinta (30) días adicionales contados a partir de la expiración del término original. En caso de que la agencia autoprorrogue ese término, así lo deberá notificar a todas las partes. Si la fecha de archivo en autos de copia de la notificación de la orden o resolución es distinta a la del depósito en el correo de dicha notificación, el término se calculará a partir de la fecha de depósito en el correo.

[…]

Sección 4.2. — Término y Forma para Presentar la Revisión. (3 LPRA § 2172

Cualquier parte podrá presentar una revisión judicial ante el Tribunal de Apelaciones dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sección 3.15 de esta Ley cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de

reconsideración. La parte recurrente notificará la presentación del recurso de revisión a la agencia y a todas las partes dentro del término para instar el recurso de revisión, siendo dicho término de naturaleza jurisdiccional. La notificación podrá hacerse por correo. Disponiéndose que si la fecha de archivo en autos de copia de la notificación de la orden o resolución final de la agencia o del organismo administrativo apelativo correspondiente es distinta a la del depósito en el correo de dicha notificación, el término se calculará a partir de la fecha del depósito en el correo. En los casos de impugnación de subasta, la parte adversamente afectada por una orden o resolución final de la agencia, o de la entidad apelativa de subastas, según sea el caso, podrá presentar un recurso de revisión ante el Tribunal de Apelaciones dentro de un término de diez (10) días contados a partir del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o la entidad apelativa, o dentro de diez (10) días de haber transcurrido el plazo dispuesto por la Sección 3.19 de esta Ley. Si la fecha de archivo en autos de copia de la notificación de la orden o resolución es distinta a la del depósito en el correo de dicha notificación, el término se calculará a partir de la fecha del depósito en el correo. La mera presentación de un recurso de revisión judicial al amparo de esta Sección no tendrá el efecto de paralizar la adjudicación de la subasta impugnada. El Tribunal de Apelaciones atenderá la Solicitud de Revisión Judicial como una cuestión de derecho.
[…][6]

Es notable a simple vista que ambas disposiciones establecen un foro distinto para acudir en revisión judicial. Es en esta discrepancia, precisamente, que descansa el argumento de nulidad levantado por la parte apelante en defensa de su reclamo a una nueva revisión judicial. Los tribunales estamos llamados a llenar las lagunas o vacíos en la ley y armonizar los estatutos aplicables que estén en conflicto, a los fines de obtener un resultado sensato, lógico y razonable. Puerto Rico Fast Ferries, LLC v. APP y otros., 2023 TSPR 121, 213 _____, al mencionar a Rosario Domínguez et als v. ELA et al., 198 DPR 197, 206 (2017). Es en virtud de este deber que la parte apelante nos invita a determinar que la revisión judicial ocurrida en el recurso KLRA201700410 fue inoficiosa e ineficaz por falta de jurisdicción y nos piden que le ordenemos al Departamento a subsanar la violación al debido proceso de ley ocurrida.

---

[6] El lenguaje citado es aquel contenido en la antigua LPAU y no el vocablo actual que el vigente estatuto establece para la revisión de las resoluciones finales administrativas, puesto que era el antiguo estatuto, el vigente al momento en que se emitió la resolución administrativa.

La parte apelada, por su parte, sostiene que el foro de revisión judicial establecido en la Ley de Bosques es cónsono con aquel que originalmente se había establecido cuando se aprobó inicialmente la Ley de Procedimientos Administrativos. Sin embargo, señala que dicho estatuto fue posteriormente enmendado por la Ley Núm. 247-1995, a los efectos de establecer al entonces Tribunal de Circuito de Apelaciones como foro al que debía acudirse en revisión de las determinaciones finales administrativas.

Afirmativamente, el Departamento plantea que es indiscutible que las disposiciones de la LPAU aplican a todos los procedimientos adjudicativos conducidos por todas las agencias que no hayan sido expresamente exceptuadas por la ley de su aplicación. Igualmente afirma que es innegable que el DRNA no fue excluido por la LPAU de la definición de agencia, por lo que dicha ley es aplicable a todos los procedimientos adjudicativos de la agencia; incluida la revisión judicial de sus resoluciones finales. Por último, y ante los hechos señalados, la parte apelada arguye que la revisión judicial efectuada en su día ante este tribunal fue correcta en derecho, válida y final y firme.

Una lectura de la Exposición de Motivos de la Ley 170 del 12 de agosto de 1988 (antigua LPAU) nos lleva a coincidir. Allí, se reconoció que la ausencia de uniformidad en el proceso decisional de las estructuras administrativas establecidas por los administradores públicos producía inestabilidad y confusión a la ciudadanía, la que vive sujeta a reglamentaciones complejas y desconocidas. Así pues, se adoptó la medida para sistematizar y crear un cuerpo uniforme de reglas mínimas que toda agencia debía observar; establecer normas distintas para gobernar las determinaciones en los procesos adjudicativos de las agencias y establecer un procedimiento uniforme de revisión judicial.[7]

---

[7] Véase, Exposición de Motivos de la Ley 170 de 12 de agosto de 1988.

Ciertamente, el propósito para el cual se aprobó la LPAU en el año 1988 derrota el procedimiento judicial incompatible de la Ley de Bosques que denominaba a los tribunales de primera instancia como foro con jurisdicción para acudir en revisión judicial de las determinaciones tomadas a su amparo. No podemos obviar que la Sec. 4.1 de la Ley Núm. 170 del 1988, dispone que:

> Las disposiciones de esta Ley serán aplicables a aquellas órdenes, resoluciones y providencias adjudicativas finales dictadas por agencias o funcionarios administrativos las que podrán ser revisadas por el Tribunal de Apelaciones mediante Recurso de Revisión Judicial, excepto:
>
> Las dictadas por el Secretario de Hacienda con relación a las leyes de rentas internas del Estado Libre Asociado de Puerto Rico […]
>
> Las dictadas por el Centro de Recaudación de Ingresos Municipales con relación a las deficiencias, tasaciones e imposiciones contributivas de la "Ley sobre la Contribución sobre la Propiedad Mueble e Inmueble" […] 3 LPRA sec. 2171.[8]

Nótese que las resoluciones del DRNA no está entre las excepciones contempladas por el mencionado estatuto. Ante esto, resolvemos que las disposiciones que rigen a qué foro acudir para una revisión judicial en el caso son aquellas de la Sec. 4.1 de la Ley Núm. 170-1988. Como resultado, concluimos que la notificación realizada por el DRNA fue conforme a derecho y el foro intermedio tenía jurisdicción para atender la controversia. Por lo cual, la determinación del DRNA advino final y firme.

El segundo y tercer error señalado por el apelante no se atenderá por este foro. Los planteamientos señalados nos solicitan que hagamos **nuevamente** una revisión sobre la *Resolución* emitida por el Departamento. No obstante, estamos ante una etapa de ejecución de dicha determinación administrativa. Este procedimiento no se puede utilizar para volver a atacar la *Resolución* de forma colateral. Ortiz Matías et al. v. Mora Development, 187 DPR 649, 657 (2013). Solo nos resta confirmar la ejecución de la *Resolución* pronunciada el 28 de diciembre de 2016 por el ente

---

[8] La Ley Núm. 170-1988 estaba vigente cuando el DRNA notificó su *Resolución*.

administrativo, conforme la *Sentencia* emitida por el foro recurrido, sin pasar juicio sobre su corrección. *Íd*., págs. 656-657.

-IV-

Por los fundamentos antes expuestos, confirmamos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce, el 10 de abril de 2024.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones